# Winter *v.* Baldwin.

*Application by Stockholder, for Mandamus against Cashier of National Bank.*

1. *Right of stockholder to inspect books of private corporation; national banks.*—National banks organized under the act of Congress are within the purview of the statute securing to stockholders in a private corporation the right to inspect and examine its books, records, and papers (Code, § 1677); and the right, when improperly denied, will be enforced by *mandamus.* (CLOPTON, J., dissenting.)

2. *Mandamus to corporation, or officer.*—A *mandamus* will be awarded against the cashier, or other officer having the custody of the books of a private corporation, on his improper refusal to allow a stockholder to inspect and examine them; but not against the corporation, unless to compel the discharge of some corporate duty.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

Application by petition by J. S. Winter, a stockholder in the First National Bank of Montgomery, for a *mandamus* against said corporation, and against A. M. Baldwin as its

[Winter v. Baldwin.]

cashier, requiring them to allow the petitioner to inspect and examine the books and records of the bank. Judge Arrington refused to award a *mandamus*, holding that national banks are not within the statutory provisions securing to stockholders in a private corporation the right to inspect and examine its books and records. The order refusing the writ is assigned as error.

WINTER & WINTER, for appellant.

TOMPKINS & TROY, *contra*.

SOMERVILLE,. J.—The statute declares the law of this State to be, that "the stockholders of all private corporations have the right of access to, inspection and examination of the books, records and papers of the corporation, at reasonable and proper times."—Code, 1886, § 1677. This statute is but a slight modification of the rule of the common law, and its construction is fully discussed in the case of *Foster v. White*, 86 Ala. 467. We there held, that the purpose of the statute was to secure to the stockholder of every corporation the right generally to examine the books at all reasonable and proper times; and that, upon a denial to him of the exercise of this right, he was entitled to a *mandamus*, upon an averment of facts which *prima facie* bring the applicant within the terms of the statute, and showing such denial. If the inspection is sought from improper motives, or for reasons which are insufficient to justify it, this was said to be a matter of defense, not necessary to be negatived by the applicant by way of anticipation in his pleadings.

The present application is made by a stockholder in a national bank, and the main question raised is, whether these institutions are entitled to the prerogative of being exempted from the operation of the above section of the Code. The decisions are numerous which hold, that the States are restrained from legislating adversely to the interests of these banks, or discriminating unfavorably against them, on the ground that they are authorized constitutional agencies of the Federal Government, appropriately designed to aid in the administration of the fiscal operations of the government. These decisions have reference chiefly to State laws evincing unfriendly discrimination in the exercise of the taxing power, the tendency of which was often to cripple their influence, and even destroy their very exist-

ence.—*Pollard v. Zuber,* 65 Ala. 628; *People v. Weaver,* 100 U. S. 539; Cook on Stock & Stockholders (2d Ed.), § 571.

There is nothing of a hostile or discriminating character in the operation of the statute under consideration. Its purpose is to place all stock corporations on precisely the same footing—to confer on the stockholders of each the right to know their financial condition, to ascertain whether they are being honestly and profitably conducted, or otherwise, and to keep a supervision over all the details of management which can in any way affect the value of the stock, including the good fame and financial integrity of the institution. The statute unquestionably applies to banks incorporated by the States. We see no reason why it should not also apply to national banks.

The principle is enunciated, in general terms, by the United States Supreme Court, in *Waite v. Dowley,* 94 U. S. 527, as follows: "We have more than once held in this court," says Mr. Justice Miller, "that the national banks organized under the acts of Congress are subject to State legislation, except where such legislation is in conflict with some act of Congress, or where it tends to impair or destroy the utility of such banks, as agents or instrumentalities of the United States, or interferes with the purposes of their creation." It was decided in that case, that a statute of the State of Vermont was valid, which required the cashiers of national banks in that State to transmit to clerks of the several towns a list of the stockholders, with the number of their shares, for the purpose of taxation.

The same doctrine had, in effect, been previously announced in the case of *National Bank v. Commonwealth,* 9 Wall. 353, where a statute of the State of Kentucky required "the cashier of a bank, whose stock is taxed, to pay into the treasury the amount of the tax due. If not, he was to be liable for the same, with twenty per cent. upon the amount." The tax itself was authorized by the act of Congress, but the State law undertook to regulate the mode of its assessment and collection, by obliging the cashier to collect the tax out of the dividends, and pay it over to the State. The objection was taken, that a State could not thus interfere with national banks, by interposing such a duty on their officers. But the United States Supreme Court held the law to be a valid exercise of State legislative power, and free from constitutional objection.

We can see nothing in the right conferred on a stockholder, to inspect the books of a national bank, which, in any manner, tends to impair or destroy the utility of such banks as fiscal agents of the Federal Government, or which interferes with the purposes for which they were created. Nor can we see anything in the laws of Congress which, even by implication, forbids the exercise of such a right by stockholders.  These laws, it is true, authorize the appointment of bank examiners by the Comptroller of the Currency, and provide that these institutions shall not be subject to any visitorial powers other than those authorized by Congress, "or are vested in the courts of justice."—U. S. Rev. Stat. §§ 5240, 5241.  But these provisions were not intended, in our opinion, to curtail, or even to regulate, the rights of stockholders, or their relations towards the bank. An act of Congress will not be construed to take away the jurisdiction of State courts, or to remove any favored persons or institutions from the equal operation of State laws, unless the purpose to accomplish this result is unambiguously expressed, or implied by necessary intendment.—*Cooke v. State National Bank of Boston*, 52 N. Y. 96.  It was accordingly held in *National Park Bank v. Gunst*, 1 Abbott's New Cases' (1876), that a national bank organized under the act of Congress, which was decided to be a foreign corporation, was subject to a general statute of New York requiring foreign corporations to give security for payment of costs before instituting a suit in a State court.  That decision was made by the New York Superior Court, but no appeal was taken from it.  See, also, 2 Morse on Banks and Banking (3d Ed.), § 157, p. 1294; Notes on Revised Stat. U. S. (Gould & Tucker), pp. 961-962.

We accordingly hold that a national bank is subject to the influence of section 1677 of the Code of Alabama, equally with all other corporations.

The writ, however, must issue against the cashier of the bank, or other officer having the custody of the books; and it does not run against the corporation, as such, unless to compel the discharge of some corporate duty.  The bank, in its corporate capacity, was not a proper party defendant to this proceeding.—Wood on *Mandamus*, pp. 23, and 29-30; Moses on *Mandamus*, 199; *People v. Throop*, 12 Wend. 183; *People v. Onderdonk*, 1 How. (N. Y.) Prac. 247; Angell & Ames on Corp. (11th Ed.), § 707.

Reversed and remanded.

CLOPTON, J. dissents, holding that section 1677 of the Code was not intended, and does not apply to associations incorporated under the "National Bank Act" of Congress—the relative rights of the shareholders and duties of the officers to them not being proper subjects of State legislation.